AMEDEO C. MEROLLA, executor, *vs.* TALMAN & JOHNSON INSURANCE AGENCY, INC.

Worcester.   March 6, 1968. — May 8, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Agency,* What constitutes, Insurance agent.   *Contract,* To procure insurance.   *Deceit.*

A conclusion that an insurance agency entered into a contract with a property owner to obtain insurance on his property against loss by fire was not warranted merely by evidence that one about to enter the agency's employ undertook with the owner's agent to "bind this insurance right over with . . . [the insurance agency] immediately," naming the insurance companies to be used, and, either before or after entering the agency's employ, requested it to consider whether a policy could be obtained, and that it did so.  [302]

In an action of tort for deceit by the owner of property lost by fire against an insurance agency, it was error to direct a verdict for the defendant where there was evidence that before the fire the owner's agent had at least two conversations with an employee of the agency authorized to solicit business and to sell insurance in which the employee stated that insurance policies previously requested by the owner had been written but had not been mailed, and that in fact the insurance had not been obtained.  [302–303]

CONTRACT AND TORT.   Writ in the Superior Court dated March 26, 1963.

The action was tried before *Meagher,* J.

*Francis H. George* for the plaintiff.

*Philip J. MacCarthy* (*David A. Talman* with him) for the defendant.

WHITTEMORE, J.   The issue in this case on the plaintiff's exceptions is whether Kevin Condon, in speaking certain words, could be found to have been the agent of the defendant so that the defendant was liable to the plaintiff's testator, Ralph Letizia, for failure to insure Letizia's property in Rhode Island against loss by fire.

At the close of the evidence the judge directed verdicts for the defendant on the counts in tort.   He submitted to

the jury the special question "[w]hether . . . [the defendant] entered into a contract with Ralph Letizia." The jury answered in the negative and the judge directed a verdict for the defendant on the count in contract.

The evidence permitted the jury to find as follows. Condon in February, 1961, was arranging to end his insurance business in Rhode Island where he had been special agent of a fire insurance company in charge of all selling activities of that company. He began working for the defendant in Worcester on March 5, 1961. Before mid-February, 1961, Fenton Batton, an insurance adjuster who was a friend of Letizia and was acting for Letizia, called Condon at his home in Rhode Island and asked him to write fire insurance on Letizia's business in Condon's company. Condon said he would bind it and that he had done so. In mid-February, 1961, Batton called Condon, asked about Letizia's fire insurance and was told that Condon's company would not insure that risk. When Batton said he would place the insurance elsewhere Condon said, "That wouldn't be necessary. . . . I'm going into business with Talman & Johnson and I will bind this insurance right over with them immediately. The companies we will use will be Travelers and The Preferred Mutual." After Condon entered the defendant's employ Batton had at least two conversations with him. The first resulted from Batton's calling Condon at his home and Condon returning the call the next day "from Worcester." In each conversation Batton asked, "Where are the insurance policies?" and each time Condon replied that they had been written but because of the new job and for other reasons they had not been mailed.

In the defendant's employ Condon was paid a salary but no commissions and had authority to solicit business and sell insurance but could not commit the defendant to any particular policies nor bind insurance. The defendant was not licensed to do business in Rhode Island. It was the defendant's practice to notify a customer immediately if the defendant was unable to place the desired insurance. After

the fire loss on April 14, 1961, Batton at Letizia's request called Condon at the defendant's office, reported the loss and asked Condon if he wanted Batton's office to handle the loss. Condon replied in the affirmative and left the telephone to get his "dailies" as Batton requested but did not return to the telephone. "Mr. Dwyer," not identified beyond his name, came on the telephone and said, "We couldn't place that risk." Batton asked, "Why?" Dwyer replied, "We just couldn't" and to the further question, "To what companies did you try?" he said, "What difference does that make?" and "slammed up" the telephone.

The conversation in February as a result of which Batton, for Letizia, understood that the policy had been written has only background significance. Condon was not in the defendant's employ at the time. His undertaking to place insurance with the defendant could not have been found to bind the latter.

There is no evidence that any other contractual undertaking was made at any time by anyone. We assume that Dwyer's remarks were some evidence that the defendant had at some time dealt with the issue whether a policy could be obtained on Letizia's property. But it is conjectural whether this was because of a request made by Condon before or after he entered the defendant's employ and, in any event, considering at Condon's request whether a policy could be obtained would not show an undertaking to Letizia to insure him.

There was, however, a basis for a recovery in tort under count 2 or count 3. The jury could have found that Batton's inquiries to Condon in March were made to him as the defendant's employee rather than to a friend who had undertaken to accommodate Letizia, and that it was within the actual as well as the apparent authority of Condon as an employee with power to solicit business and to sell insurance to represent whether policies had been procured by that office. What Condon said could have been found to have included by implication a representation that the defendant had accepted the business and had caused policies to be

written so that Letizia was insured. *Robichaud* v. *Athol Credit Union*, 352 Mass. 351, 354–355.

Express testimony of reliance on the representation was not required. *Rayden Engr. Corp.* v. *Church*, 337 Mass. 652, 660. That Batton testified that if he had not been told in February that the policies were bound he would have gotten insurance elsewhere does not negative the inescapable implication that if Condon had told the truth in March, Letizia, or Batton for him, would have acted then to protect Letizia.

That the jury found that there was no contract suggests, as the defendant contends, that they would have found for the defendant in tort also. But the issues are not the same and we cannot rule that there was no error in taking the case in tort from the jury.

> *Exceptions sustained as to*
> *the counts in tort.*
> *Judgment for the defendant on*
> *the count in contract.*